UNITED STATES v. INDEPENDENT PACKET CO. *

(Circuit Court of Appeals, Eighth Circuit. September 13, 1915.)

No. 4205.

SHIPPING ☞14—REGULATION OF STEAM VESSELS—PENALTY FOR VIOLATION OF REGULATIONS.

The violation by a steam vessel, subject to the inspection laws of the United States, of Rev. St. § 4463, as amended by Act April 2, 1908, c. 123, § 1, 35 Stat. 55 (Comp. St. 1913, § 8225), by failing to take on board for a voyage a licensed mate as required by the certificate of the local inspector, subjects the vessel and her owner to the penalty of $500 prescribed by section 4499 (Comp. St. 1913, § 8275) for violation of any provision of that title.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. §§ 28, 29; Dec. Dig. ☞14.]

Appeal from the District Court of the United States for the Eastern District of Missouri; David P. Dyer, Judge.

Libel by the United States against the steamer Belle of Calhoun; Independent Packet Company, claimant. Decree dismissing libel, and libelant appeals. Reversed.

Vance J. Higgs, Asst. U. S. Atty., of Caruthersville, Mo. (Arthur L. Oliver, U. S. Atty., of St. Louis, Mo., on the brief), for the United States.

Forest P. Tralles, of St. Louis, Mo., for appellee.

Before SANBORN and CARLAND, Circuit Judges, and LEWIS, District Judge.

LEWIS, District Judge. · The steamboat, Belle of Calhoun, whose field of navigation was the Mississippi and tributaries above St. Louis, was libelled for a statutory penalty of $500. She was proceeded against for having left her home port, St. Louis, in the late afternoon of September 6, 1911, carrying both passengers and freight on one of her regularly scheduled trips without a licensed mate on board. On seizure her owner, appellee, intervened as claimant, furnished bond for her release, and by answer denied the facts charged in the libel of information on which the right to recover the penalty was based. The facts charging her dereliction in leaving the port are set out, and there can be no doubt on the proof that the truth of the charge was established. Her master, Captain Carvell, testified that they did not have a licensed mate aboard until they reached Grafton, thirty-three miles out, where by good chance he found one and brought him on. This is not denied, but impliedly confessed notwithstanding the answer.

The whole of Title 52 of the Compiled Statutes (1901) is devoted to the regulation of steam vessels and the safeguarding against perils. The Belle of Calhoun was subject to inspection and had been inspected under the requirements of the Title, and certificate that that had been done was regularly made and issued which was her authority to engage in navigation on the terms and conditions therein specified. The certificate (in evidence) showed that she was of 451 gross tons, had 27 state rooms and 60 berths, and was allowed to carry 119 passengers, including (30) deck and steerage, and also freight. The certificate fixed and set out the complement of officers and crew to be carried, among them one licensed master and one licensed mate, whose duties, as shown by the proof, were to alternate on the watch, the mate being next to the master in command. Copies of the certificate are carried on the boat in conspicuous places. (Amendatory Act March 3, 1905, c. 1454, § 4, 33 Stat. 1025 [Comp. St. 1913, § 8275].)

Section 4463 of the Title, as amended (33 Stat. 55) is, in part:

"Any vessel of the United States subject to the provisions of this title or to the inspection laws of the United States shall not be navigated unless she shall have in her service and on board such complement of licensed officers and crew as may, in the judgment of the local inspectors, who inspect the vessel, be necessary for her safe navigation. The local inspector shall make in the certificate of inspection of the vessel an entry of such complement of officers and crew." [Comp. St. 1913, § 8225.]

It needs no argument to demonstrate that the Belle of Calhoun on the occasion charged violated the letter and also the purpose of the statute in going from St. Louis to Grafton without a licensed mate in her service and on board. A statement of the facts leaves no escape

from that conclusion, and the statute fixing the penalty for the act is equally clear. Section 4499 [Comp. St. 1913, § 8275]:

"If any vessel propelled in whole or in part by steam be navigated without complying with the terms of this title, the owner shall be liable to the United States in a penalty of $500 for each offense."

That the penalty was incurred as charged can not be doubted when only the part of section 4463 above quoted is considered; but it is argued that when the latter part of that section is viewed and given its appropriate effect on the remainder the whole of the section should be given both an inclusive and exclusive interpretation. That is to say, the section includes a penalty for violation of its requirements, and also excludes, by implication, penalties that are imposed by other sections of the Title. And this position is said to be measurably strengthened by the amendatory Act of March 3, 1913 (37 Stat. 732, c. 118, § 1 [Comp. St. 1913, § 8225]).

Reverting now to the latter part of the section relied on (4463) as it stood in September, 1911, it read:

"If any such vessel is deprived of the services of any member of the crew without the consent, fault, or collusion of the master, owner or any person interested in the vessel, the vessel may proceed on her voyage, if in the judgment of the master she is sufficiently manned for such voyage. * * * If the vessel shall have been insufficiently manned in the judgment of the local inspectors the master shall be liable * * * in case of an insufficient number of licensed officers, to a penalty of five hundred dollars."

The amendment of March 3, 1913, extended liability for the penalty to the owner, and relieved the master. And so, it is argued that by the amendment there was legislative interpretation that the penalty imposed under Section 4499 was not incurred by a violation of 4463, and that this legislative interpretation ought to be judicially accepted. But to sustain this contention is to put a restricted meaning on the plain words of Section 4499, and to exempt one from the penalty fixed by that section according to its plain words who was not subjected to a penalty by section 4463 prior to amendment. The fact that the master was subjected to a penalty by Section 4463 does not impress us as being a reason why the owner should not be made liable by another section to a penalty for not obeying on his part the command of Section 4463. Moreover, it is equally clear that the latter part of Section 4463 has no application here. Its conditions are wholly beside the facts in hand. The Belle of Calhoun was not deprived of the services of a licensed mate "without the consent, fault or collusion of the master, owner or any person interested in the vessel"; but to the contrary, the owner represented by Sebastian must be held to have consented, and proof is not lacking that Carvell, the master, and Hudson, clerk, and interested in the vessel, were at fault. Hudson, the clerk, was a stockholder in the Packet Company; through an arrangement between him and Sebastian, the latter had been advancing money for some time to keep the boat going and during that time he had been aboard on the regular trips, participating in the management of the boat and assuming at times to discharge the duties of mate. He seems to have assumed general responsibility in its

operation. The master testified that Sebastian's "word was always taken like he owned the whole boat, and he acted as clerk and mate and everybody else," and tried to act as master too. On the particular occasion he sent for a licensed mate before departure, but could not agree with him on wages and for that reason he was not taken on. The master was asleep when the boat "backed out" and did not know that a licensed mate had not been engaged until the boat was up-stream several miles.

This condition of affairs demonstrates the necessity for Section 4499.

The penalty should have been assessed, and the learned District Judge erred in entering an order of dismissal.

Reversed.